IN THE UNITED STATES DISTRICT COURT      FILED
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION                  2014 JAN 30  PM 2: 12

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

COMPASS BANK,                                    BY _____
                            Plaintiff,                      DEPUTY

-vs-                                             Case No.  A-13-CA-831-SS

GAMBLE J. PALMER, JR.; JTP ENTERPRISES,
LLC;  NORTH  TRENTON,  LTD.;  NORTH
TRENTON III PARTNERS, LTD.,
                            Defendants.

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendants Gamble J. Palmer, Jr., JTP Enterprises, LLC, North Trenton, LTD., and

North Trenton III Partners, LTD.'s Motion to Transfer Venue [#6], and Plaintiff Compass Bank's

Response [#11]. Having reviewed the documents, the relevant law, and the file as a whole, the Court

now enters the following opinion and orders.

### Background

This lawsuit involves a number of loan transactions between Plaintiff Compass Bank

(Compass) and Defendants Gamble J. Palmer, Jr. (Palmer), JTP Enterprises, LLC (JTP), North

Trenton, LTD. (NTL), and North Trenton III Partners, LTD. (NT III). The specific issue confronting

the Court is where the alleged breach of these various loan agreements should be litigated. Before

answering the question, it is important to describe the different loans. Each loan actually originated

with Texas State Bank (TSB) as lender, and on or around March 13, 2008, TSB was acquired by and

merged into Compass, making it the successor in interest with respect to the loans. Currently, Compass is the owner and holder of each of the loans.

The various loans are as follows, according to Compass's Complaint:

(1)     The NTL Note:

On or about July 13, 2005, NTL executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas. Palmer executed a guaranty of the NTL Note (the NTL Note Guaranty). This Note matured on January 13, 2013, but NTL has failed to pay the amount due and owing under the NTL Note. Similarly, Palmer has failed to pay the balance as required by the NTL Note Guaranty.

(2)     The NT III Partners Note

On or about July 17, 2007, NT III Partners executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas. Palmer executed a guaranty of the NT III Partners Note (the NT III Partners Note Guaranty). This Note, pursuant to a loan modification, matured on January 17, 2013, but NT III Partners has failed to pay the amount due and owing under the NT III Partners Note. Similarly, Palmer has failed to pay the balance as required by the NT III Partners Note Guaranty.

(3)     The JTP Pad Note

On or about February 20, 2008, JTP executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas. Palmer executed a guaranty of the JTP Pad Note (the JTP Pad Note Guaranty). This Note, pursuant to a loan modification, matured on December 23, 2012, but JTP has failed to pay the amount due and owing under the JTP Pad Note. Similarly, Palmer has failed to pay the balance as required by the JTP Pad Note Guaranty.

(4)     The Port Isabel Note

On or about June 23, 2009, Palmer, individually, executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas. This Note has been modified three times, and is cross-collateralized as well as cross-defaulted to other obligations of Palmer and his entities. Due to Palmer's defaults on other obligations with Compass, Compass accelerated the Port Isabel Note, which is now fully due and payable. Palmer has not paid the remaining balance.

(5)     The D&E Building Note

On or about December 7, 2005, Palmer, individually, executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas.  This D&E Building Note does not appear to be the subject of any of Compass's causes of action.

(6)     JTP OM Note

On or about February 6, 2008, JTP executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas. Palmer executed a guaranty of the JTP OM Note (the JTP OM Note Guaranty).  This Note has yet to mature.  Under the terms of the JTP OM Note, any default by JTP on any other loans with Compass constitutes a default under the JTP OM Note.  Since JTP is in default on JTP Pad Note, then JTP is in default on the JTP OM Note.  JTP has failed to pay the amount due and owing under the JTP OM Note.  Similarly, Palmer has failed to pay the balance as required by the JTP OM Note Guaranty.

(7)     Jackson I Note

On or about December 20, 2006, Jackson I Corp., another Palmer entity, executed a loan agreement with TSB, and it is secured by a deed of trust on certain real property located in Hidalgo County, Texas.  Palmer executed a guaranty of the Jackson I Note (the Jackson I Note Guaranty).

*See* Compl. [#1], ¶¶ 12–40.

Based on these loans and the Defendants' alleged defaults, Compass filed a lawsuit here in the Western District of Texas, Austin Division, asserting breach of contract.  Specifically, Compass is alleging: (1) NTL breached the NTL Note; (2) NT III Partners breached the NT III Partners Note; (3) JTP breached the JTP Pad Note; and (4) Palmer breached the Port Isabel Note.  In addition, Compass asserts the NTL Note Guaranty, the NT III Partners Note Guaranty, the JTP OM Note Guaranty, and the Jackson I Note Guaranty executed by Palmer were each independent, valid contracts between Compass and the applicable Defendant.  Palmer breached each of these contracts as well.

-3-

Defendants filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) on October 16, 2013. They contend the Court should transfer the case to the Southern District of Texas, McAllen Division, because it is the more convenient venue, and at least two of the loan agreements contain forum selection clauses requiring any lawsuit to be filed in the Southern District of Texas, McAllen Division. On November 6, 2013, Compass filed a response in opposition, and the Court now considers whether to transfer the case.

## Analysis

### I.        Enforcement of Forum Selection Clauses and *Atlantic Marine*

On December 3, 2013, the United States Supreme Court issued an opinion, which bears directly on this case. The case is *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), and it addresses the enforcement of forum selection clauses. The parties filed their respective briefs prior to this decision, but the Court utilizes the new framework discussed in *Atlantic Marine* in deciding the instant motion. Before describing this decision, however, the Court first sets out the still-applicable standard for § 1404(a) motions.

### A.        28 U.S.C. § 1404(a)

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but

that the district courts have 'broad discretion in deciding whether to order a transfer'" under §

1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313–15 (5th Cir. 2008) (quoting *Balawajder*

*v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

The preliminary question in a motion for transfer of venue is whether the suit could have

been filed originally in the destination venue. *Id.* at 312. After determining the suit could have been

filed in the destination venue, the Court must next focus on whether the party requesting the transfer

has demonstrated the "convenience of parties and witnesses" requires transfer of the action,

considering various private and public interests. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508

(1974).[1]

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance

for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious

and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests decided

at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance

of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Although

the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or

exclusive"; indeed, the Fifth Circuit has noted "'none . . . can be said to be of dispositive weight.'"

*In re Volkswagen of Am.*, 545 F.3d at 313–15 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar.*

---

[1] Although *Gilbert* dealt with *forum non conveniens*, the Fifth Circuit applies the "*Gilbert* factors" derived from it to the § 1404(a) setting. *See In re Volkswagen of Am.*, 545 F.3d at 314 n.9.

*Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).  Despite the wide array of private and public concerns, a court must make a "flexible and individualized analysis" in ruling on a motion to transfer venue. *Ricoh Corp.*, 487 U.S. at 29.

Though the above is similar to the standard in the *forum non conveniens* context, § 1404(a) requires a lesser showing of inconvenience. *In re Volkswagen of Am.*, 545 F.3d at 314.  As such, the movant need not show the *Gilbert* factors *substantially* outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one.  *See id.* Nonetheless, as the Supreme Court has cautioned, while the movant's burden is lessened, the plaintiff's choice of venue is still to be considered.  *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).  Accordingly, the Fifth Circuit's rule is that while the plaintiff's choice of venue is not a factor under *Gilbert*, it places a "significant" burden of proof upon the movant to "show good cause for the transfer."  *In re Volkswagen of Am.*, 545 F.3d at 314 n.10.  "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.* at 315.

Finally, § 1404(a) operates as a safety valve of sorts, and serves to give corporations—which, due to their frequently pervasive contacts nationwide, are often subject to venue virtually anywhere—some recourse from the highly permissive general venue rule found in 28 U.S.C. § 1391. *See In re Volkswagen of Am.*, 545 F.3d at 313.  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *Id.*  "Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."  *Id.*

-6-

**B.**    *Atlantic Marine*

   *Atlantic Marine* first established forum selection clauses may not be enforced through § 1406(a) and Rule 12(b)(3); rather, a motion to transfer under § 1404(a) is a proper mechanism for forum selection clauses.  134 S. Ct. at 579.  The Court then outlined the approach district courts should take when faced with a § 1404(a) motion.  In short, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).  The Court made clear, while § 1404(a) motions are appropriate for forum selection clauses pointing to a federal forum, *forum non conveniens* is the proper doctrine for enforcing such clauses directing the case to a state or foreign forum.  *Id.* at 580.

   The Court then proceeded to carefully describe the correct § 1404(a) analysis and the relevant burdens.  As an initial matter, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  *Id.* at 581.  In a § 1404(a) case where there is no forum selection clause at issue, the district court proceeds through the standard § 1404(a) analysis described above, but the Court in *Atlantic Marine* adjusted the § 1404(a) calculus in three important ways when there is a valid forum selection clause.

   First, "the plaintiff's choice of forum merits no weight."  *Id.*  "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.*  Second, the court "should not consider arguments about the parties' private interests."  *Id.* at 582.  Since the parties agreed ahead of time

to the forum, they waive the right to challenge the preselected forum as inconvenient. *Id.* The court

still, however, considers the public interest factors, but "[b]ecause those factors will rarely defeat a

transfer motion, the practical result is that forum-selection clauses should control except in unusual

cases." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation

and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original

venue's choice-of-law rules." *Id.*

> The Court summed up its position as follows:
>
> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

*Id.* at 583.

With this new framework from *Atlantic Marine* in mind, this Court proceeds to analyze the

Defendants' motion to transfer.

## II.    Application

## A.    Loan Agreements with Forum Selection Clauses

Compass is asserting breach of contract based on the Borrower's default with respect to four

of the loan agreements: (1) the NTL Note; (2) the NT III Partners Note; (3) the JTP Pad Note; and

(4) the Port Isabel Note. While not entirely clear, Compass also alleges JTP is in default under the

JTP OM Note because, under the terms of the JTP OM Note, any default by JTP on any other loans

with Compass constitutes a default. Since JTP is in default on JTP Pad Note, then JTP is in default

on the JTP OM Note. In addition, Compass is asserting breach of contract concerning Palmer's role

as guarantor with respect to: (1) the NTL Note Guaranty; (2) the NT III Partners Note Guaranty; (3) the JTP OM Note Guaranty; and (4) the Jackson I Note Guaranty.  Two of these Notes contain the following provision:

> 11.03 Governing Law.  Unless otherwise specified therein, each Loan Document shall be governed by and construed with the laws of the State of Texas and the United States of America.  Subject to the provision of Article 10 herein, the Borrower and Guarantor hereby irrevocably agree that any legal proceeding arising out of or in connection with this Loan Agreement or the Loan Documents shall be brought in the district courts of Hidalgo County, Texas or in the United States District Court for the Southern District of Texas, McAllen Division.

*See* Defs.' Mot. Transfer [#6-1], Ex. A (NTL Note), at 48; *Id.* [#6-2], Ex. B (JTP OM Note), at 43.

Defendants request the Court enforce these forum selection clauses and transfer the case to McAllen.  Compass objects to enforcement of the forum selection clause.  First, Compass argues the clauses are "permissive" and not "mandatory."  The Court agrees these clauses are not "mandatory," and follows *Atlantic Marine*'s direction for enforcement of forum selection clauses within the § 1404(a) framework.

Second, Compass argues the forum selection clauses only reference "Borrower and Guarantor," and not "Lender" or "Compass."  Accordingly, Compass contends, only the Borrower and Guarantor agree to be bound by the clause, not the Lender.  The Court finds this creative argument unpersuasive.  The original lender, TSB, agreed to these clauses and wanted "any legal proceeding" to be brought in Hidalgo County or McAllen.  Compass wants to be exempt from the provisions and be allowed to bring a legal proceeding someplace other than Hidalgo County or McAllen.  Under this view, the clauses are only meant to make sure the Borrower and Guarantor, if they were to ever bring a lawsuit, must bring it in Hidalgo County or McAllen.  But the provision does not say the Borrower and Guarantor agree "any legal proceeding brought by Borrower and

-9-

Guarantor" shall be brought in Hidalgo County or McAllen.  The clauses clearly state *any legal proceeding* shall be brought in Hidalgo County or McAllen.  Interpreting a forum selection clause to bind just one half of the contracting parties makes little sense, and Compass cites no case law indicating forum selection clauses may be interpreted in this manner.  Compass, as the successor in interest to the original lender, agreed to be bound by the loan agreement's terms, and it cannot now escape a forum selection clause its predecessor agreed to when it signed the contract.  Indeed, by making sure "Borrower" and "Guarantor," agree to the forum selection clause, and not specifically referencing "Lender," it is likely TSB was the party seeking to make sure any legal proceeding be brought in Hidalgo County or McAllen.  Strangely, it is now the Borrowers and Guarantor seeking to enforce the clause, but this role reversal does not permit Compass to avoid being bound by the contracts' clear terms.

Having established the forum selection clauses are indeed enforceable with respect to Compass, the Court turns to *Atlantic Marine*.  As an initial matter, the Court notes since the parties agreed to a valid forum selection clause, it should "ordinarily transfer the case to the forum specified in the clause." *Atl. Marine*, 134 S. Ct. at 581.  "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*  Next, the Court gives no weight to Compass's selection of the Western District of Texas, Austin Division.  Instead, Compass bears the burden of establishing transfer to McAllen is unwarranted.  Compass fails to meet this burden.  Indeed, Compass argues the public interest factors (and the private ones) "are neutral between the Western District of Texas and Southern District of Texas."  Pl.'s Resp. [#11], ¶ 24.  Compass does not show transfer to McAllen is "unwarranted," but rather argues litigating the case

in Austin is just as convenient as doing so in McAllen.  But Compass's preferences and convenience are given no weight.

*Atlantic Marine* also instructs the Court not to consider any private interest factors, but only the public ones.  "[B]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Atl. Marine*, 134 S. Ct. at 582.  The most relevant factor would be the local interest in having localized interests decided at home.  The Court concludes this factor weighs in favor of the Southern District of Texas.  The operative facts mostly occurred in McAllen, and none appeared to occur in Austin.  Defendants have never done business with Compass bankers out of Austin and have worked primarily with Compass bankers from McAllen, Phoenix, and Dallas.  The loans are payable in McAllen, and all of the loans are secured by real property located in Hidalgo County or in neighboring Cameron County.  While Compass argues the only relevant events occurred within the last year, and most of these events from McAllen occurred at an earlier, irrelevant time, this contention, taken as true, still does not weigh in favor of Austin.  No factor particularly weighs in favor of Austin, and there is one weighing in favor of McAllen.  The Court concludes the public interest factors suggest transfer to McAllen is appropriate.  In the alternative, the factors are, as suggested by Compass, "neutral," and Compass has not shown this matter is the sort of "unusual case" where a forum selection clause should not control.[2]

---

[2]*Atlantic Marine* finally instructs district courts: "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules."  134 S. Ct. at 582.  This point is irrelevant to the instant case since there are no conflicting choice-of-law rules between the Western and Southern Districts of Texas.

Therefore, the Court GRANTS Defendants' motion to transfer with respect to the loan agreements containing forum selection clauses, and transfers these causes of action to the Southern District of Texas, McAllen Division.

**B.     Loan Agreements without Forum Selection Clauses**

Unlike the two loan agreements referenced above, the other Notes do not have similar forum selection clauses. In a § 1404(a) case where there is no forum selection clause at issue, the district court proceeds through the standard § 1404(a) analysis. *See id.* at 581. First, there is no dispute this suit could have been filed originally in the Southern District of Texas, McAllen Division.

Second, the private interest factors weigh in favor of McAllen, and at a minimum are "neutral," as suggested by Compass. Concerning the relative ease of access to sources of proof, the ability to secure attendance of witnesses, and the cost of attendance of witnesses, all of these would appear to weigh in favor of McAllen. The contracts are performable and payable in McAllen. To the extent there are witnesses in this case, many are located in or near McAllen. *See* Mot. Trasfer [#6-7], Ex. G (Gamble Aff.). Again, Compass contends all of these witnesses and the time period in which these contracts were actually negotiated and signed are irrelevant. Compass argues this lawsuit only focuses on the past year, which according to it, has little to do with McAllen. Rather, during this period, Defendants were working with Compass representatives in Phoenix and Dallas. Compass, however, does not argue these factors weigh in favor of Austin but instead concedes they are "largely neutral." The Court concludes the first three private interest factors weigh in favor of transfer to McAllen, and at a minimum, are neutral.

The fourth private interest factor, in light of the Court's decision to transfer the causes of action arising out of the loan agreements with forum selection clauses, clearly weighs in favor of

McAllen. The fourth factor is all other practical problems which make trial of a case easy, expeditious, and inexpensive. To sever this case based on whether the loan agreements contained a forum selection clause would make litigation of the issues more difficult, less efficient, and more expensive for all parties. While these loan agreements are all independent contracts, they all involve Defendant Gamble as either the individual Borrower, the Guarantor, or as the individual behind a Borrower entity. Therefore, litigating these breaches of contract together in one lawsuit in one venue only makes sense.

Accordingly, on the whole, the private interest factors weigh in favor of transfer to McAllen. The public interest factors also weigh in favor of transfer to McAllen or, at a minimum, are neutral as described above in Part II(A).

Therefore, the Court GRANTS Defendants' motion to transfer with respect to the loan agreements not specifically containing forum selection clauses, and transfers these causes of action to the Southern District of Texas, McAllen Division.

### Conclusion

Compass wants to avoid the forum selection clauses its predecessor in interest included in the contract to make sure any legal dispute arising out of these loan agreements would be brought in Hidalgo County or the Southern District of Texas, McAllen Division. Compass, however, provides no persuasive reason why the forum selection clauses should not be enforced as valid against it. *Atlantic Marine* directs district courts to enforce forum selection clauses except for in unusual cases, and there is no indication this case meets such a description. Moreover, the public interest factors weigh in favor of McAllen, and are at least neutral. Because the Court must transfer the case with respect to the Notes containing forum selection provisions, it makes little sense to sever

the case and keep the matter in Austin with respect to the Notes without such venue restrictions. Moreover, the public and private interest factors again weigh in favor of transfer to McAllen when the Court focuses on the loan agreements without forum selection clauses.  Therefore, the Court transfers the entire lawsuit to the Southern District of Texas, McAllen Division.

Accordingly,

IT IS ORDERED that Defendants Gamble J. Palmer, Jr., JTP Enterprises, LLC, North Trenton, LTD., and North Trenton III Partners, LTD.'s Motion to Transfer Venue [#6] is GRANTED;

IT IS FINALLY ORDERED that the Clerk shall transfer this case to the Southern District of Texas, McAllen Division.

SIGNED this the 30ᵗʰ day of January 2014.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE